UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ARTEMIO GARCIA, JR.,** **Plaintiff,** v. **FEDERAL BUREAU OF PRISONS,** **Defendant.** | ) | **Case No. 19-cv-02368 (APM)** |

**ORDER**

Plaintiff Artemio Garcia brought this action under the Religious Freedom Restoration Act ("RFRA"), asserting that Defendant Federal Bureau of Prisons ("BOP") violated RFRA when it denied his request to have tattoos surgically removed from his body. Compl., ECF No. 1. Plaintiff is incarcerated at the federal prison facility in Butner, North Carolina. BOP asks the court to transfer this matter in the interests of "convenience" and "justice," 28 U.S.C. § 1404(a), to the United States District Court for the Eastern District of North Carolina, where the Butner facility is located. Def.'s Mot. to Transfer, ECF No. 14-1 [hereinafter Def.'s Mot.]. Although a close call, the court agrees that transfer of this matter is warranted.

I.

In *Starnes v. McGuire*, the D.C. Circuit articulated several factors that courts should consider when deciding whether to transfer a case brought by a prisoner incarcerated outside of the District of Columbia. *See* 512 F.2d 918, 929–31 (D.C. Cir. 1974). Those factors include: (1) the prisoner's difficulty communicating with counsel; (2) the challenge of transferring the prisoner; (3) the availability of witnesses and files; (4) the speed with which the case can be

resolved; and (5) whether the case involves a national policy issue that may require the testimony of policymakers. *See id.*; *see also Royer v. Fed. Bureau of Prisons*, 934 F. Supp. 2d 92, 103 (D.D.C. 2013) (listing *Starnes* factors). Additionally, under 28 U.S.C. § 1404(a), a court is required to balance the "convenience of [the] parties and witnesses" and the "interest of justice" in deciding whether to transfer the case. Courts should consider a host of "private" and "public" interest factors in the balancing. *See Royer*, 934 F. Supp. 2d at 103–04 (setting forth factors). The private-interest factors include: "(1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; and (4) the convenience of the witnesses and other sources of proof." *Id.* at 103. The "public interest" factors include: "(1) the desire to avoid multiplicity of litigation as a result of a single transaction or event; (2) the local interest in deciding local controversies at home; and (3) the relative familiarity of both venues with the governing laws." *Id.* at 104. The moving party bears the burden of establishing that transfer is warranted. *See Smith v. Yeager*, 234 F. Supp. 3d 50, 55 (D.D.C. 2017). The court first considers the private- and public-interest factors, before turning to the additional factors set forth in *Starnes*.[1]

II.

The private-interest factors slightly favor transfer. Although a plaintiff's selection of forum is ordinarily afforded deference, that choice is entitled to less deference when, as here, the defendant seeks transfer to the plaintiff's home district. *See Pres. Soc. of Charleston v. U.S. Army Corps of Eng'rs*, 893 F. Supp. 2d 49, 54 (D.D.C. 2012). With Defendant preferring venue in North Carolina (the second private-interest factor), the first two private-interest factors tilt in favor

[1] Section 1404(a) also requires the transferring court to consider whether the action "might have been brought" in the transferee forum in the first instance. 28 U.S.C. § 1404(a). Venue in this case plainly would have been proper in the Eastern District of North Carolina. *See* 28 U.S.C. § 1391(e)(1) (listing the venue requirements when the defendant is an officer, employee, or agency of the United States). Plaintiff does not dispute this fact; therefore the court does not address it further.

transfer. The third private-interest factor—the origin of the claim—is neutral. According to the Complaint, Plaintiff "specifically and continually" asked local BOP officials in North Carolina for religious accommodation to remove his tattoos, but they treated his request as "purely medical" and denied his request. Compl. ¶ 18. Eventually, BOP officials in Washington, D.C. also denied his request. *Id.* ¶¶ 22–23. Plaintiff's claims are thus rooted in both North Carolina and Washington, D.C., thereby neither favoring nor disfavoring transfer. Finally, the fourth private-interest factor—the convenience of witnesses and sources of proof—favors a North Carolina forum, albeit slightly. Witnesses and sources of proof are likely to be in both jurisdictions, as decisionmakers are present in each. One key source of proof, however, is resident in North Carolina: Plaintiff himself. Plaintiff will be a critical witness, not only for the obvious reason of his needed testimony, but because Defendant has suggested that there may be a need to inspect his body. *See* Def.'s Reply in Supp. of Def.'s Mot., ECF No. 21, at 3 & n.3 (arguing that there will be factual issues relating to "the location and size" of Plaintiff's tattoos). Plaintiff's physical presence in North Carolina therefore favors a North Carolina forum. *Cf. Accurso v. BOP*, Case No. 17-cv-02626 (APM), 2018 WL 4964501 (D.D.C. Oct. 15, 2018), at *3 (declining transfer outside this District Court where the need for the plaintiff's "physical presence in the District of Columbia, at least for discovery, is unclear"). On balance then, the private-interest factors favor transfer.

The public-interest factors are neutral. There is no concern here with respect to multiplicity of litigation. Moreover, although there may be some "local interest" in the parties' dispute, the court doubts that such interest is particularly strong. Finally, there is no reason to believe that either this court or the Eastern District of North Carolina will be more familiar with the laws

governing Plaintiff's claims. The public-interest factors therefore do not point to a particular forum, leaving the overall balance of interests leaning toward transfer to North Carolina.

The *Starnes* factors also favor a North Carolina forum. Plaintiff's difficulty in communicating with his counsel is a non-issue, as counsel are located in Vermont. The cost and challenges associated with transferring Plaintiff to Washington, D.C. for discovery, if necessary, favor a North Carolina forum, especially given present uncertainties surrounding the COVID-19 health crisis. The court already has discussed how the availability of witnesses and files favors North Carolina. As for the speed with which the case can be resolved, Defendant points out that this District had more pending cases than the Eastern District of North Carolina as of June 30, 2019. *See* Def.'s Mot. at 8. But such raw numbers "stripped of any context, do not tell the court much about the relative congestion and complexity of the districts' respective dockets." *Accurso*, 2018 WL 4964501, at *3. The potential speed of resolution is thus a non-factor. Finally, as the case in part involves BOP's national policies regarding tattoo removal, the testimony of policymakers may be required, thus favoring remaining in this District. But, on balance, the *Starnes* factors favor transfer to North Carolina.

For his part, Plaintiff does not make an individualized assessment of the § 1404(a) or *Starnes* factors, but seeks to analogize this case to *Accurso*. *See* Pl.'s Opp'n to Def.'s Mot., ECF No. 18. But this case is not *Accurso*. *Accurso* involved a challenge under RFRA to a national BOP policy barring inmates from personally possessing certain items of religious worship. 2018 WL 4964501, at *2. The court declined to transfer the case to the District in which the plaintiff was incarcerated because the denial of access to the items "did not involve the exercise of discretion by the Warden or involve the application of policy to circumstances unique to Plaintiff. Instead, the Warden made a straightforward decision based on the classification scheme devised

by BOP policymakers." *Id.* Here, by contrast, some local factors appear to have played a role in Defendant's decision-making. For instance, the BOP Central Office denied Plaintiff's request for accommodation because he failed to show that it "is necessary for good order and the security of the institution." Compl. ¶ 23. Although in so concluding the Central Office relied on a national policy, questions pertaining to "good order" and the "security of the institution" implicate proof best obtained from the institution where Plaintiff resides. Such institution-specific considerations were not at issue in *Accurso*.

III.

In conclusion, having weighed the relevant factors under § 1404(a) and *Starnes*, the court grants Defendant's motion to transfer this action to the Eastern District of North Carolina. Defendant's Motion for a Protective Order Staying Discovery Pending Resolution of the Motion to Transfer, ECF No. 15, is denied as moot. On the court's own motion, however, discovery will be stayed until entry of a scheduling order in the transferee district.

Dated: March 26, 2019

Amit P. Mehta
United States District Court Judge